Judge Mills
delivered the opinion of the Court, composed of Chief Justice Boyle and himself, Judge Owsley not sitting in the case.
This is a contest for lands under adverse claims. The appellee relies on the follow-in entry, for relief against an elder grant, to-wit:
“William Payne enters 1000 acres of land, on a Treasury warrant No. 8690, lying on a branch of Rockcastle, that Boon’s trace goes down; beginning at the forks oi the hcajjold Creek, running Ibastwardly four hundred poles; thence at right angles (if not restrained by uncultivatable land) Northwardly so far *63 as will include the quantity, excluding and binding on landswnfitfor cultivation
decision of the “rcuit t^e en_ try.
Evidence of notoriety cnll'ed for^n* the entry.
February 21, 1784.
This entry was sustained by the court below, as good for all the land included by a right angled figure to a line due east iroin the beginning, and thence due north from each end thereof, till a line parallel to the .first, .included 1000 acres, which was the rhode.in-’which the survey was originally made. The entry of the appellants being posterior in date need not be noticed.
It appears that a trace uniformly and notoriously called B.oon’s trace, leading from English’s Station to Bo.onsbor.ough, passed down a branch of Rock-castle river, continuing therewith seven or eight miles. ;jt also crossed the .river and then went up another creek called Skegg’s creek, on the opposite side.of the river. JBut before it .went up Skegg’s creels, the trace forked, and one branch of it led in anotherjdireetion,,and did -not pass along any creek emptying into the river. The creek first named has a remarkable fork, which nearly divides the waters thereof. This fork is situated not piore than a half mile from where the trace departed from the Station as it descended it. This "creek, clown which the trace passed, is now called Round stone creek, or Round stone Lictk creek, and the fork, which departs therefrom, op ;which the trace did pot descend,' is noyv called Clear creek. And indeed there is proof that these streaips were known by these latter names bpfore the date of the entry. It is, however, strongly proved that the stream, down which the trace passed, was not known to nqmy, and perhaps ¿npstof the hunters and explorers conversant in the neighborhood, by the name of Round stone lick; butpvas described as the creek or branch of Rockcastle, down which,Boon’s trace passed; ,and those who knew it by another name, knew it by this also and all admit it was well described by . either name, before, and at the date of the entry. The only uncertainty in this description arises from one branch of the same trace going up another stream on the opposite side of Rockcastle. This *64 uncertainly is however obviated by the proof of Scaffold creek, which branched from the creek claimed, and not from the other, and it is proved to have been notorious by that name. It is true, some knew it by its present name of Clear creek, and others by both names. But Scaffold creek was the most notorious name. Every subsequent locator, with the proper information would have taken the stream down which the trace passed, which was connected with Scaffold creek, instead of the opposite creek on the other side of Rockcas-tle.
Call for the forks of Scaffold Creek, held to mean the fork made by the junction of that creek, with a branch of itockcastle.
Entry calling to exclude prior claims, without describing them, is invalid; otherwise of a call to exclude lands ung(; for cui_ tivation.—
*64 Having thus ascertained the stream intended, the next difficulty arises from the words of the entry, beginning at the forks of Scaffold creek. This latter creek had no notorious forks, except one five or six miles from its junction with the other stream, so that an entry laid there could not lie on the stream down which Boon’s trace passed. The place where Scaffold creek united with Round stone is the fork claimed. This' it is contended will not answer the calls of the entry; and it must he admitted that this place is not well described. One witness has proved the two streams united were known by the name of Scaffold. But the-weight of evidence is against ibis, and the entry itself rather negatives the idea. But as no one could lay this entry with propriety up at the fork of Scaffold creek itself, and as Scaffold creek, at its separation from the other stream, did make a fork, no reasonable doubt could be entertained that that was the place intended, notwithstanding the words do not literally mean it. We therefore conceive, that the court below assumed the correct point of beginning.
The expressions, “if not restrained by uncultivatable land” and “excluding and binding on lands unfit for cultivation” are next relied on as fatal to this entry. And the cases decided on entries containing expressions “excluding prior claims,” and “including so much vacant lands” have been relied on as analagous in principle to this. Jt is true it is decided jin these latter cases that such calls are do- *65 tractive, and that it lay cm the mater of such entries to point out such claims by name; so that oth-érs might find them. But there is a considerable difference between these calls and the calls of this entry. Prior claims could Only be sought for On the records first, and then upon the ground, and if found on the record, yet finding them upon the ground afterwards might prevent insuperable cliffi-culties. In this case the untillable land must be sought on the ground only. The question here might be, who is bound to show that such land is of is not within the boundary? Must the complainant show that such land is not there, to avoid the effect of the call excluding it, or must the opposite party show that such lands are there, to prevent the other from taking it. It is true that such a call for excluding out of the inside of the survey lands unfit for cultivation, might produce considerable uncertainty and difficulty, in ascertaining what was or was not iinfit for cultivation in the understanding of the locators of that day.
Bu{_ u
Where the entry are^to run at right angles, if not [estíaint1? cultivation and thence exci^din^’ and bourlliDim-on lands un-° ^°rnoultj} the landTun-fit for culti, ration are // enUy'is invalid/
Rut we need not here go into it; for the follow-ipg expressions, “binding” on such lands,- and the previous expressions, “if not restrained” by such lands show that the margin of the claim was to be affected by these calls. Add to this thé cajls for the cardinal points oí the compass, are not positively assumed as the course of the lines. They are “eastwardlv” and “northwardly,” instead of' east and north. Cases may he found where such expressions have been construed due east of due north; hut these are cases where such calls stood alone, and the uncertainty thereby created would be properly aided by construction, at res metgis vediat quam pereatr, and we know of no cases where such uncertain expressions are used evidently with an intention that some other objects should bind the claim in which they have been constrained to fix the lines to the cardinal points. This would be making calls aided by construction control positive calls, which would be absurd. The locator in this instance left these expressions eastwardly and northwardly evidently indifinite, that he might accommodate tlie lines of his survey to the untilable lands, and that *66 such lands should form a.part if not the whole of his boundary. Hence it is necessary that he should shew such lands as his-boundary. He has bound himself to “bind” his survey on such lands, and must therefore do it, or show that it cannot be done before he can dispense with the call. The language assures us that such lands are there, and how near they approach to, or how far they are distant from the base, even if the base be certain, or how much his sidelines must be varied on the account of such lands approaching one or both of them, he has not shown us, and we therefore deem his entry inva-did.
Petition for a re-hearing.
The decree must be reversed with costs and, the •cause he remanded with directions to dismiss the •bill with costs.